IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
(HEARD AT MEMPHIS)

FILED

FOR PUBLICATION

February 1, 1999
Filed: February 1, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | HENRY CRIMINAL |
| | ) | |
| | ) | |
| Vs. | ) | HON. JULIAN P. GUINN, |
| | ) | JUDGE |
| GERALD ROBERT STEVENS, | ) | |
| LAURIE ANN WILLIAMS and | ) | |
| JAMES DARREN BROTHERS, | ) | No. 02-S-01-9712-CC-00112 |
| | ) | |
| Appellants. | ) | |

**For Appellants,**
**Stevens & Williams:**
David H. Hornik
Nashville, Tennessee

**For Appellant, Brothers:**
Eric D. Kinsolving
Old Hickory, Tennessee

**For Appellee:**
John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Kathy Morante
Deputy Attorney General
Nashville, Tennessee

At Trial:
Robert G. Radford
District Attorney General

Vicki Snyder
Assistant District Attorney General
Huntingdon, Tennessee

# O P I N I O N

COURT OF CRIMINAL APPEALS
AFFIRMED.

ANDERSON, C.J.

We granted this appeal to determine whether a conclusory allegation in an affidavit that information was provided by a "concerned citizen source" is sufficient to establish the presumptive reliability of the information for the issuance of a search warrant under the Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution.[1]

There is a distinction in Tennessee law between "citizen informants" and "criminal informants" or those from the criminal milieu. Information provided by an unnamed ordinary citizen is presumed to be reliable, and the affidavit need not establish that the source is credible or that the information is reliable. State v. Melson, 638 S.W.2d 342, 354 (Tenn. 1982), cert. denied, 459 U.S. 1137, 103 S. Ct. 770, 74 L. Ed. 2d 983 (1983). On the other hand, where information is provided by an anonymous criminal informant, the affidavit must establish (1) the basis of the informant's knowledge, and (2) the reliability of the informant or the information. State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989).

The trial court determined that the information in the affidavit established probable cause for the search warrant and denied the defendants' motion to suppress. The Court of Criminal Appeals, concluding that the affidavit contained presumptively reliable information from a citizen informant, agreed that probable cause existed for the issuance of the search warrant and affirmed. See Melson, 638 S.W.2d at 354.

After reviewing the record and applicable authority, we conclude that the lower courts erred in determining that the information was provided by a citizen

---

[1] Oral argument was heard in this case on May 12, 1998, in Memphis, Shelby County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

source and was, therefore, presumptively reliable. We further conclude, however, that when reviewed under the separate standard applicable to confidential criminal informants, the affidavit satisfied the two-pronged standard adopted in <u>Jacumin</u>. Therefore, we conclude that the search warrant was supported by probable cause, and we affirm the result reached by the Court of Criminal Appeals on the separate grounds stated.

## **BACKGROUND**

Law enforcement officers received information from a "concerned citizen" source that methamphetamine was being cooked and stored at a residence in Henry County. They sought and obtained a search warrant for the residence based on the following affidavit:

> An adult concerned citizen source who is believed to be credible and liable [sic] and who resides in Henry County and has family ties to Henry County has told the affiant that they had seen methamphetamine being stored and cooked within 72 hours prior to the swearing of this affidavit at the above stated residence. The citizen told the affiant that they had seen several flask [sic], tubes, hot plate [sic] and several jugs sat [sic] up in the rear room of the residence. The citizen told the affiant of the cooking process they had seen and the affiant having knowledge of the cooking process, believed the citizen to be reliable and truthful in their information. The citizen ask [sic] for no payment for their information and acted on civic duty. Based on the above stated information the affiant believes that Williams is cooking and storing methamphetamine at the said resident [sic]. The citizen source was furnished with the finished product of what they had seen being cooked and immediately turned over to Officer Wyrick and Officer Eaker. The product was field tested and product was found to be methamphetamine. The affiant asked that the search warrant be valid up to 48 hours for securing and execution of the search warrant to allow D.E.A. participation from agents outside the state.

As a result of the search, the police recovered over 64 grams of methamphetamine base in the kitchen, 7.8 grams of methamphetamine powder in the bedroom, 1 gram of 96% pure methamphetamine powder in the utility room, 3 sets of scales, a box containing glassware and tubing, a notebook with instructions on how to manufacture methamphetamine, chemistry books, $4,900 in cash, and a

wallet containing $1,100. Additionally, all the chemicals necessary to manufacture methamphetamine (ephedrine, red phosphorous, iodine, muriatic acid, and acetone) were found at the residence. The police later obtained a second search warrant to search a storage shed leased to defendants Stevens and Williams. In this shed, the police found glassware, tubes, funnels, and over 2,870,000 encased ephedrine tablets.

The defendants[2] moved to suppress the evidence from the search of the house on the grounds that the affidavit did not establish probable cause for the issuance of a search warrant. The defendants argued that the affidavit did not establish that the informant was reliable, that the informant knew what methamphetamine looked like, or that the informant had knowledge of the cooking process. The defendants also argued that the informant was not a "citizen source" because he or she remained unnamed and was paid $200 as a reward for providing the police department with a "good case." The trial court overruled the motions to suppress.

The jury convicted all three defendants of manufacturing a Schedule II controlled substance (methamphetamine) and possession of unlawful drug paraphernalia.[3] On appeal, the Court of Criminals Appeals concluded that the information in support of the warrant had been obtained from a "citizen source" and affirmed the trial court's denial of the motion to suppress.

---

[2] Although all three defendants were present when the initial search was executed, only Stevens and Williams filed a motion to suppress to contest the constitutionality of the search.

[3] For the manufacture of a Schedule II controlled substance, a class C felony, Stevens was sentenced to five years and Williams and Brothers to three years and six months incarceration in the Tennessee Department of Correction. For possession of unlawful drug paraphernalia, a class A misdemeanor, Stevens, Williams, and Brothers were sentenced to 11 months and 29 days in the county jail. They were each fined $102,500 for the manufacturing and possession convictions.

We granted this appeal to review whether the lower courts properly determined that the information had been provided by a citizen informant and that probable cause had been established for the issuance of the search warrant.

## ANALYSIS

We begin our review by examining Article I, § 7 of the Tennessee Constitution which provides:

> That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offenses are not particularly described and supported by evidence, are dangerous to liberty and ought not be granted.

Tenn. Const. art. I, § 7. Likewise, the Fourth Amendment of the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

As a general rule, a search warrant shall be issued only on the basis of an affidavit, sworn before a "neutral and detached" magistrate, which establishes probable cause for its issuance. See Jacumin, 778 S.W.2d at 431; State v. Moon, 841 S.W.2d 336, 338 (Tenn. Crim. App. 1992). A showing of probable cause requires, generally, reasonable grounds for suspicion, supported by circumstances indicative of an illegal act. State v. Johnson, 854 S.W.2d 897, 899 (Tenn. Crim. App. 1993). Thus, the need for the magistrate to make a neutral and detached

decision regarding the existence of probable cause requires that the affidavit contain more than mere conclusory allegations by the affiant. <u>Moon</u>, 841 S.W.2d at 338.

In determining the reliability of information contained in an affidavit in support of a search warrant, there is a significant distinction between a "citizen informant," or bystander witnesses, and "criminal informants," or those from a "criminal milieu." <u>Melson</u>, 638 S.W.2d at 354. Information provided by a citizen or bystander witness that is known to the affiant is presumed to be reliable; and the state is not required to establish either the credibility of the informant or the reliability of the information. Although the name of the citizen informant does not have to be disclosed, "the reliability of the source and the information must be judged from all of the circumstances and from the entirety of the affidavit." <u>Melson</u>, 638 S.W.2d at 356.

Conversely, if the source is a criminal informant, the determination of reliability must be based on the two-pronged <u>Aguilar-Spinelli</u> test, which was adopted by this Court in <u>Jacumin</u>, 778 S.W.2d at 436.[4] The magistrate issuing the search warrant must be "informed of both (1) the basis for the informant's knowledge, and either (2)(a) a basis establishing the informant's credibility or (2)(b) a basis establishing that the informant's information is reliable." <u>State v. Cauley</u>, 863 S.W.2d 411, 417 (Tenn. 1993) (citation omitted). Probable cause may not be

---

[4] The test was derived from two United States Supreme Court cases, <u>Aguilar v. Texas</u>, 378 U.S. 108, 114, 84 S. Ct. 1509, 1514, 21 L. Ed. 2d 637 (1964), and <u>Spinelli v. United States</u>, 393 U.S. 410, 412-13, 89 S. Ct. 584, 587, 21 L. Ed. 2d 637 (1969), in which the Court said that an affidavit in support of a search warrant which contains information from a confidential informant must contain facts demonstrating the informant's basis of knowledge and either the informant's credibility or the information's reliability. Although the Supreme Court later abandoned this analysis in favor of a totality of circumstances approach, <u>Illinois v. Gates</u>, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983), this Court has retained the <u>Aguilar-Spinelli</u> test under Article I, § 7 of the Tennessee Constitution. <u>Jacumin</u>, 778 S.W.2d at 436.

found until both prongs are independently considered and satisfied.  State v.

Ballard, 836 S.W.2d 560, 562 (Tenn. 1992).

The rationale for distinguishing between citizen informants and confidential

criminal informants has been stated as follows:

> Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out of revenge against the subject.  The nature of these persons and the information which they supply convey a certain impression of  unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown . . . .  However, an ordinary citizen who reports a crime which has been committed in his presence, or that a crime is being or will be committed, stands on much different ground than a police informer.  He is a witness to criminal activity who acts with an intent to aid the police in law enforcement because of his concern for society or for his own safety.  He does not expect any gain or concession in exchange for his information.  An informer of this type usually would not have more than one opportunity to supply information to the police, thereby precluding proof of his reliability by pointing to previous accurate information which he has supplied . . . .

State v. Smith, 867 S.W.2d 343, 347 (Tenn. Crim. App. 1993) (emphasis omitted)

(quoting State v. Paszek, 184 N.W.2d 836, 842-43 (Wis. 1971)).

We believe the evidence preponderates against the lower courts' finding that

the citizen informant standard under Melson applies in this case.  See State v.

Odom, 928 S.W.2d 18, 23 (Tenn. 1996) (proper standard of review in suppression

cases is the preponderance of the evidence standard).  The affidavit contained only

conclusory allegations that the informant was a "concerned citizen source," "acted

on civic duty," and "ask [sic] for no payment for their information."  There is no

explanation as to why the citizen was in the house while methamphetamine was

being cooked and/or why the "citizen" was "furnished with the finished product."  The

police did explain why the citizen was later paid $200.  It was a reward for a good

case.[5]  The unexplained circumstances warrant caution in determining whether the informant is a presumptively reliable citizen.  As Professor LaFave has explained:

> [A]s a general proposition it is an informant from the criminal milieu rather than a law-abiding citizen who is most likely to be present under such circumstances.  This is not to suggest that a person giving information about the location of narcotics may never qualify as a citizen-informer, for it is sometimes possible to show with particularity how a law-abiding individual happened to come upon such knowledge.  Rather, the point is that in such a case it should not be deemed sufficient that the police have alleged in a rather conclusory fashion that the person was "an individual who is neither a paid nor habitual informant," "a responsible citizen of utmost character and integrity" or "a reputable member of the community."  Perhaps a more particularized showing of the law-abiding nature of the person supplying the information will suffice. . . .

Wayne R. LaFave, 2 Search and Seizure, § 3.4(a) (3d ed. 1996) (first emphasis added) (footnotes omitted); cf. Cauley, 863 S.W.2d at 417 (non-accusatory information that did not describe criminal activity was not in the nature of a criminal informant's tip).  A particularized showing or explanation was absent in this case, and there are no other facts or circumstances that may be gleaned from the affidavit that would bolster or corroborate the conclusory descriptions of the "citizen."  Accordingly, the affidavit does not establish that the information was provided by a citizen informant, nor does it warrant a presumption of reliability as the lower courts concluded.

Having concluded that the Melson standard does not apply to this case, we turn to the question of whether the affidavit is nonetheless sufficient because it satisfies the two-prongs of the Jacumin test.  With regard to the informant's basis of

---

[5] The defendants' main contention is that the Melson standard does not apply to this case because the "concerned citizen source" was paid.  The fact of payment to a citizen in exchange for information does not always make the Melson standard inapplicable.  There is a logical distinction between one who receives payment at or near the time the information is provided and one who receives payment or reward only after the truth of the information has been verified.  See People v. Stevens, 423 N.E.2d 1340 (Ill. 1981).

knowledge, the affidavit sufficiently established that the informant had witnessed firsthand the cooking process and the equipment used to manufacture methamphetamine on the premises. See, e.g., Moon, 841 S.W.2d at 339 ("'basis of knowledge' prong is supported in this case by the informant seeing 'marijuana being used and/or distributed' at the defendant's residence"). With regard to the reliability of the informant, the affidavit states only that the "citizen" was "believed to be credible and [re]liable." Although this assertion alone is insufficient to establish the veracity of the informant, see State v. Valentine, 911 S.W.2d 328, 330 (Tenn. 1995), the statements indicating that a positive field test was performed on the "finished product" in the informant's possession sufficiently demonstrated the reliability of the information. See Ballard, 836 S.W.2d at 562-63 (informant's description of unique jewelry that matched the victim's description sufficient for magistrate to conclude that the information was reliable); see also LaFave, supra, § 3.3(f). Thus, we conclude that the affidavit satisfied both prongs of the Jacumin test and supported a finding of probable cause for the issuance of the search warrant.

## CONCLUSION

We conclude that the affidavit in this case contained sufficient information for the issuing magistrate to find probable cause for the issuance of a search warrant. Although the lower courts erroneously determined that the informant was a "citizen source" and applied the Melson standard, our review indicates that the affidavit satisfied the two-prong test governing confidential informants as set forth in Jacumin. Therefore, the Court of Criminal Appeals' judgment is affirmed on the separate grounds stated. The costs of this cause are taxed to the defendants-appellants.

_____
RILEY ANDERSON, CHIEFJUSTICE

**CONCUR:**
Drowota, Birch, Holder, and Barker, JJ.